We'll hear argument next in Case 13-7120, Samuel Johnson v. United States. Ms. Menendez? Mr. Chief Justice, and may it please the Court, near possession of a short-barrel shotgun is not a violent felony within the definition of the Armed Career Criminal Act's residual clause because it is neither similar in degree of risk nor similar in kind to the enumerated offenses set forth in the language that immediately precedes that clause. And this Court has repeatedly held that those enumerated offenses provide important both qualitative and quantitative parameters to lower courts in examining whether a particular predicate offense counts as a violent felony. Just six years ago in Begay, this Court made clear that the enumerated offenses must be similar or that, I'm sorry, a questioned predicate offense must be similar in kind to one of the enumerated offenses, as well as similar in degree of risk. And when that proper framework is applied to the question of mere possession of a short-barrel shotgun, it satisfies neither test. Ginsburg. Ginsburg. Should the Court take into account that in the sentencing guidelines a possession of a short-barrel shotgun is ranked under career offenses? Your Honor, in Guideline Amendment 674 in 2004, which Your Honor asks about, the Sentencing Commission included mere possession of an unregistered short-barrel shotgun or possession of a short-barrel shotgun as a crime of violence. But it did not do so after an examination of the empirical data or an assessment of the pool of data that gives us great confidence in the Sentencing Commission's decisions. In marked contrast, Your Honor, in 1991, when the Sentencing Commission adopted Amendment 433 that concluded that being a felon in possession of a firearm should not count as a crime of violence under the guidelines, it reached that conclusion after an extensive examination of empirical data. The difference between the adoption of those two amendments highlights the reason that the Sentencing Commission's decision on this point does not deserve deference in this case. An additional consideration, Your Honor, is that in making that decision in 2004, the Sentencing Commission was not anticipating the guidance that this Court provided in James, Begay, Chambers, and Sykes, and it doesn't engage in any of the proper analysis. So whether we look at it as the Sentencing Commission not serving their traditional role as fact-finders and the keepers of empirical data, or whether we acknowledge the fact that it preceded very important guidance from this Court, I don't think it controls this Court's decision. Sotomayor, I'm sorry. Alito, is it possible for any possession offense to qualify as a violent felony? Your Honor, I believe it would be possible for a very rare possession offense to qualify as a violent felony if the possession alone presents a serious potential risk of injury. Respectfully, I believe the flaw with the other side's position in this case is their entire analysis is based not on the risk inherent in the mere possession, but on the risk inherent in committing a further violent crime with that weapon. And so I believe that any mere possession of a firearm, including a short barrel firearm, is not going to satisfy the definition of violence.   Kagan. Kagan. But if I understand the government's argument, it's that there's a very strong correlation between possession in this case and use for criminal purposes of a kind that clearly would pose a risk of violent conduct and injury. So are you saying that we never can take that kind of correlation into account, that possession crimes just have to be treated in a box and we can't think about whether the possession of something increases the risk of use, which then will pose a serious risk of injury? Your Honor, my response is twofold. First, although the government has asserted that correlation, they have not substantiated it in any way. And there's no data before the Court that supports the claim that merely possessing a short barrel shotgun is somehow connected with frequent or even regular use. So that seems right, that it's a question to pose to the government. It's like what's in back of this correlation. But is your argument, then, they haven't made their empirical case, or even if they had lots of statistics, it still wouldn't be enough? And that is correct, Your Honor. I think even if they had made the empirical case, it wouldn't be enough. And also, is there any other use for a short barrel shotgun? Your Honor, as many as 40,000 Americans have purchased these weapons legally, registered them lawfully, and have found that they serve some purpose, whether that purpose is in hunting for a person of a smaller stature or home defense. The question before the Court is not whether there is some reason to have them. Many people believe there is. The question is whether merely possessing such a weapon is a violent felony. And with due respect, Your Honor, I don't think there's any support for the assertion that these are somehow uniquely more dangerous. Scalia, even though it's criminal to possess it? It is not, Your Honor. In fact, it's fully lawful to possess a short barrel shotgun in many States, as long as it's registered federally, somebody passes a background check and pays a $200 tax. And the government's own statistics document, Your Honor, that as many as tens of thousands of Americans have followed those processes in order to legally purchase or own one of these weapons. And in fact, I was surprised in doing the research for this case that you can get these online in States where their possession is legal as long as you comply with the Federal regulations. How many States is it illegal, do you remember? Your Honor, I believe there's ten States that outright ban possession regardless of compliance with Federal regulations. And then in the remainder of the States, the question is whether its possession is legal in compliance with either State registrations or always in compliance with the Federal registration. Just a factual question. On his plea for this possession, was he charged with another crime? Yes, he was, Your Honor. He was charged with a marijuana-related crime. And both of those were pleaded guilty to with Alfred Pleas, Your Honor. Your Honor, I think the question is how much speculation is permitted. And as Your Honor correctly points out, it is our position that even if the government brought forth better data, that still wouldn't justify allowing mere possession to count as a crime of violence. The reason, I think, is inherent in this Court's jurisprudence from James, Begay, and the other cases. We have to begin this with the consideration of the elements. In fact, in the James case, Your Honor you said that a possession offense could qualify. So if someone possesses a nuclear bomb, that could qualify? Your Honor, I think that might be the very case. A biological or chemical weapon, that could qualify? And I think that is the precise thing that could qualify. And here is why, with due respect, Your Honor, possessing a biological or chemical agent by itself presents a substantial risk, just alone, even if it's under your bed. Well, how do we know that? You could make the same argument that you just made. We don't know what the risk is that this will cause, in the case of a biological weapon, the risk that it will cause an infection unintentionally. We don't know that. That statistic is no more available than the statistic on sawed-off shotguns, is it? Your Honor, I suspect that we would be better able to document the certainty that even doing nothing more than possessing such a high rate. How would you do that? You look at all the ‑‑ you try to identify the universe of people who have possessed biological weapons and see how many times somebody has gotten infected unintentionally? Your Honor, that might be appropriate, or perhaps the science alone, but that demonstrates the difference with this. This is no more dangerous than any other firearm if it's kept in a locked gun safe, kept in a closet, kept under a mattress, under a bed, or any of the other myriad places. We've highlighted for the Court 14 different cases on page 14 of our reply brief where such a weapon was found in completely nonviolent circumstances, somewhere in a home or even in a trunk, in a locked gun ‑‑ So you would say the same thing about any weapon? Any firearm for certain, Your Honor. Any firearm, mortars? I'm sorry? Mortars, artillery pieces? Your Honor, I think mere possession does not pose the kind of substantial risk that this statute is talking about. I think that when we get into the very, I'm sure, hypothetical instance of the bomb that's inherently dangerous, like a biological agent, that might be different, even untouched, Your Honor. Rockets would not be illegal possession of a rocket. That would be a violent felony in your submission. Maybe that's right. I believe that's correct, Your Honor. I believe that using a rocket in a crime of violence or in any other circumstance would be. And in fact, Your Honor, I think that in many of these cases, for instance, possession of a biological agent or a nuclear weapon, the person would likely be charged with some sort of terrorism offense, which would by itself trigger the Armed Career Criminal Act, if they were free to go on and commit future crimes, which I somewhat doubt. In this case, though, I think there's nothing different about mere possession of a short-barrel shotgun as compared to other firearms that could be simply possessed. They are simply not enough. Your Honors, this Court's jurisprudence clearly requires a categorical assessment of the question, not an imagining of what further crimes could ever happen as a result of the offense, but a looking at what comes from the elements itself. I'd encourage the Court to remember its decision in James. In James, the Court first examined the elements of the burglary, the attempted burglary statute in question, and noted that mere possession of burglary tools was not enough to constitute a violation of that attempted burglary statute. And in part because an overt act toward entry, which presented the same sort of risk as the burglary itself was present, the Court found that that could present a risk sufficient to trigger the residual clause. This is very different. This is much more like mere possession of the burglary tools, which would not be enough, than it is completing an additional overt act. Your Honor, the government uses the Court's language of ordinary case to invite this Court to engage in substantial speculation about someone — what someone might do with a short-barrel shotgun. And with due respect, I don't believe that was the purpose of the ordinary case doctrine whatsoever. In fact, in James, the ordinary case doctrine was born not to enable rampant and creative speculation, but to limit rampant and creative speculation. Breyer, what do you have — what were the numbers, if they're there, about how many people are injured as a result of possession of a short-barreled shotgun? There are no statistics that tell you that. We have absolutely no idea. We have — we have no statistics that demonstrate, Your Honor, a correlation between mere possession of a short-barrel shotgun and — That's not what I'm thinking of. I'm thinking of, do we have a statistic that says how many people are injured, forgetting how — whether it's possession or not possession or anything else? We don't have that either, Your Honor. We do have statistics offered both in our brief and some reference in opposing counsel's brief about how short-barrel shotguns are at most a de minimis, de minimis percentage of harm from weapons in general across the country. But that doesn't answer Your Honor's question. And, Your Honor, I think that that is precisely why the Begay formulation remains very important in this case. This case, unlike Sykes, which had a — an ample amount of data, although I think we could discuss at length how useful that data is and how much data can be manipulated, but there was a great deal of data documenting deaths and injuries. And therefore, this Court found that the examination of the nature of the offense and whether it was purposeful, violent, or aggressive was redundant. That's not the case here, Your Honor, because we don't have the statistical analysis to make the risk assessment easy. I do think, though, that common sense weighs heavily in favor of Mr. Johnson. And that is, as Your Honor indicated in the Doe opinion many years ago on the First Circuit, that merely possessing something is a very far cry from using it in a crime. And the government's entire analysis requires this Court to assume that these weapons are most commonly possessed only for the purpose of being used in a crime. That's simply not supported by the data, and it's not even supported by the case law provided by the government. Sotomayor, do we know how many possession crimes have been prosecuted? Possession for short-barrel shotguns? I don't have that statistic. I apologize, Your Honor. I can say that, having been an assistant Federal defender for quite a long time, we don't see these very commonly, but we do see people prosecuted for possessing a short-barrel shotgun that's not Federally registered. It's not an incredibly frequent crime. However, this has great implications, obviously, Your Honor, because approximately 600 people every year suffer the greater penalties of the Armed Career Criminal Act as a result of enhancements such as this. That's what I mean. It's about 600 a year? 600 ACCA cases each year, more or less, Your Honor. More or less. So we're talking about 35,000 people or 40,000 who own the guard the shotguns legally? Oh, I apologize, Your Honor. I provided, Your Honor, an incorrect statistic. I'm talking about people whose current conviction is for felon in possession triggering the Armed Career Criminal Act. I see what you're saying. I apologize. I do not know how many people nationwide are prosecuted for violation of one of the several States that outright bans these or for violating some other portion. I do know that they're not very common in the State of Minnesota, which is where our statute arises. Your Honors, it's also important to keep in mind that in Minnesota, as well as almost every place else that this is criminalized or criminalized if not properly registered, that constructive possession of the weapon alone is enough to make somebody guilty. This doesn't have to be on or near their person. It certainly need not be used in a crime or possessed with the intent to use it in a future crime. And in fact, some of the cases that we've proffered to the Court involve possessing this in nothing more than a locked gun case. That is simply not the sort of active, purposeful, violent and aggressive or risky conduct that the Armed Career Criminal Act's residual clause is designed to apply to. When you say constructive possession, what does that mean? That means where you don't have an item directly on your person, Your Honor, but you have the intent, at least in the Eighth Circuit, it's the intent to exercise dominion and control and the power to do so. So, for instance, I have constructive possession of the items in my briefcase, even though I don't have them with me, and I have constructive possession of items in my home, even though that's back in Minnesota. And so that demonstrates, Your Honor, the broad application of mere possession crimes and how far removed they can be from the parade of horribles with due respect that the government suggests these are inherently intrinsically tied to. Your Honor, I'd also invite the Court to examine closely the cases cited by opposing counsel in their brief, because while they do cite 16 cases in their brief in which mere — I'm sorry, in which short-barrel shotguns were used in violent crimes, it's important for the Court to note that in only two of those cases was there actually a conviction for a weapons offense or mere possession of a weapon. So in only two of those cases was the prior offense actually before the court's court today even being considered. In the other 14, and indeed also in those two, the person was convicted of the far more serious crime of violence that the weapon was used during, ranging from assault to capital murder. And as Justice Grunder, in his dissent in the Vincent case in the Eighth Circuit, made very clear, in such a case that much more serious offense would readily trigger application of the Armed Career Criminal Act, and we wouldn't need to resort to the over-inclusive interpretation proffered by the government. Alitoson What do you think is the basis for a State legislature's prohibiting the possession of a short-barreled shotgun or a short-barreled shotgun that is not properly registered? O'Connor Your Honor, I can't say what at all the State legislature's bases were, although I would note that Michigan just last year changed its mind and made these lawful. But I think that many State legislatures, and indeed Congress in 1934, when it decided to regulate these weapons, were persuaded by at least the reputation of this gun that it was associated with gangster activity in the Prohibition era. With due respect, although I am not at all disagreeing that States are within their rights to ban possession of this weapon, that reputation is somewhat dated, and in fact, there are far more intimidating weapons without even triggering the application of the Michigan firearm. Alitoson But do you think that those State legislatures came to the conclusion that there was a strong correlation between the possession of a short-barreled shotgun and the use of that weapon in committing crimes? O'Connor I think they may have come to that conclusion. I am unaware of them doing so based on data, Your Honor, including the Minnesota Act. I am unaware of even the National Firearms Act, when it was adopted in 1934, relying on actual statistics about the danger presented by this weapon. Alitoson But do you think Congress had statistics before it when it listed the specifically enumerated offenses in the Armed Career Criminal Act? Is this the sort of thing with respect to which it is reasonable to expect that there will be empirical evidence, or is this the sort of thing, the sort of decision that legislatures make based in an impressionistic way and taking into account common sense? O'Connor Your Honor, I don't know whether Congress, when it passed the residual clause, assumed that we would come to such statistical analysis. Alitoson Well, when they said burglary is a violent offense, do you think they had statistics about the percentage of all burglaries that occur within the United States that result in violence? O'Connor I don't believe so, Your Honor. I think burglary motivated the Armed Career Criminal Act in the first place. Burglary and robbery seem to be the two predicate offenses that most specifically the Court – I mean, I'm sorry, Congress intended to include as triggering prior offenses. Why? I think it's because they had the belief that an armed burglar would be more dangerous than an unarmed burglar, and wanted to capture people who were repeat and persistent property offenders who would then later possess a gun. Alitoson Well, if that is a reasonable conclusion for the national legislature to reach in enacting the Armed Career Criminal Act, why is it not equally defensive for a State legislature to make the same decision with respect to the illegal possession of a sawed-off shotgun? O'Connor It's absolutely appropriate for them to make that decision. That should not control this Court's decision about whether merely possessing that unlawful weapon is a violent felony. That decision has to be governed by the residual clause language, and it doesn't accept that. Alitoson Do you think that that judgment on the part of legislatures is entitled to any respect from this Court? O'Connor Your Honor, certainly it matters that some legislatures have chosen to ban it, but I think it matters even more that most legislatures and the United States Congress do not outlaw this weapon. They permit it to be possessed when lawfully registered. And even in 1912, the case is where it is possessed illegally, either because it's flatly banned or that it's possessed by somebody who will not register it for whatever reason, very possibly because that person doesn't want it known that he or she possesses the weapon. O'Connor Certainly, Your Honor, or because they're unaware of the registration requirement, which in almost every State will nonetheless make it a criminal conduct, or because they're unaware of the characteristics of the weapon that require it to be registered, which in some States doesn't protect one from the conviction. Your Honor, I think it's important if we're using the opinion of legislatures in Congress to help us determine whether this is a violent felony, it's important to recognize that it is widely legal. But you're right that the question before the Court is the unlawful possession and whether unlawful possession of a firearm is a violent felony. Breyer What should we do if we think that the reason that the legislature has made possession unlawful is because the legislature believes that possession will lead to a risk of physical injury? O'Connor Your Honor, I don't think that answers the question. I think the question has to be grounded in the residual clause, and the residual clause requires not just the possibility of future injury, but that the offense itself, when examined categorically and based on its element, creates a substantial risk. Breyer It says, if I use those words, I could repeat the same question and say, the reason that the legislature makes it unlawful to possess a sawed-off shotgun is because the legislature believes that possession, that's the crime, presents a serious potential risk of physical injury to another. That's why they made it unlawful. What other reason could there have been? And, therefore, their judgment is the same words that the statute uses, but for the word otherwise. O'Connor Your Honor, I don't think there's any suggestion that either the Minnesota legislature or the other minority legislatures that have reached that conclusion did so based on an understanding. Breyer What other reason would they have had for making possession unlawful? O'Connor Because I think there's a strong belief that firearms in general are unlawful, that certain types of firearms are dangerous, that certain types of firearms are more dangerous than others. And that's appropriate. We aren't saying these should be legal. We aren't saying these are common. Breyer No, I'm just saying, what other reason could they have had for making this a crime, the possession, unless they thought that possession presents a serious potential risk of physical injury to another? I'm not suggesting an answer. I want to know what your answer is. O'Connor Perhaps they were, in fact, adopting a different standard, which is we, as the Minnesota legislature, hypothetically, are going to ban this weapon because we believe that it is somewhat more dangerous than other weapons and we would prefer it is not possessed. I don't think we can assume that they went this far and this is the question the Court has to answer. Also, Your Honor, Michigan legislature, for instance, obviously disagreed when they recently changed their law to no longer prohibit mere possession of a short-barrel shotgun. I do think it is a recognition, Your Honor, that legislatures think these are dangerous weapons and they are dangerous weapons, but that does not make their mere possession violative of the residual clause of the Armed Career Criminal Act. I think it's very important in every case that we tie the examination not to a possible thing that could be done with the gun in the future, but to the actual risk presented by mere possession. In the same way that in the James case, the Court was motivated by the fact that something more than mere possession of burglary tools was required, here something more than mere possession of the weapon should be required. We would be having a much different conversation if we were talking about a different part of section 924 of Title 18, 924C, which penalizes using a weapon, even a short-barrel shotgun, during a crime of violence. That could certainly be a violent felony, but the mere possession is not. Ginsburg.  I think in your brief that explosives, one of the enumerated crimes is use of explosives, but there's no enumerated crime of possession. That's correct, Your Honor, and I'm glad you reminded me, because that was an important point for me to make, is that we — when we look at these enumerated offenses as providing guidance for the residual clause, it is very important that Congress adopted use of explosives rather than possession. And, in fact, in the legislative history in 1986, they gave examples of the sorts of things they believed would be included by that provision, and it was not mere possession of explosives. Has any legislature prohibited the possession of explosives? I am sure that some have, using certain lines of law. Oh, they've just flatly prohibited within our State, you cannot possess any explosive. Has any legislature done that? I'm not aware of that, Your Honor. I apologize. I don't know. I'm sure of that. Well, you think it's a possibility that there are States in which explosives cannot be used for demolition purposes? No, I don't think that's likely, Your Honor. But nonetheless, Your Honor, when Congress was adopting this language, they chose to put use of, prior to the term explosives, if they wanted it to be more inclusive, they could have certainly made it more inclusive. They did not. In fact, the examples given were the use of explosives to destroy energy facilities or transportation facilities. I see that I will reserve the rest of my time for rebuttal, if I might. Thank you, Your Honors. Thank you, counsel. Mr. Bash. Mr. Chief Justice, and may it please the Court. The ordinary case of possession of a sawed-off shotgun is possession in connection with serious criminal activity. That is the judgment that Congress, State legislatures, this Court in Miller and Heller, and lower courts have reached for eight decades. If that's the case, how many charges do you have that are for mere possession, not involved with an underlying crime? Most of these charges are brought at the State level, so I don't have sort of comprehensive statistics. But what I will point out is that Petitioner has now had two briefs to come forward with examples of law-abiding citizens just kind of caught up in this sawed-off shotgun regime. Oh, she raises 14 cases in her reply brief. If you look at all of those cases, Your Honor, the vast majority of them, both cited in the opening brief and in the reply brief, involve people involved in other very serious criminal activity, meth dealing, sexual abuse, assaults. So those cases only verify what I think has been this Court's judgment in Heller and Miller, Congress's judgment, the judgment of State legislatures for a long time that these are exclusively used for unlawful purposes. Sotomayor So why haven't they been outlawed federally? And why is it only a minority of States that have outlawed their, just their possession, not their registry? Because I think what the National Firearm Act reflects, and this was reflected in Attorney General Cummings' arguments in favor of the law when it was under consideration, is that if you're willing to disclose your fingerprints and photograph to the Federal Government, undergo a background check, that's only by regulation, but undergo a background check, it dissipates the chance that you're going to be involved in crimes. Gang members, terrorists, bank robbers do not go around disclosing their fingerprints and photograph to the government. So there are some atypical gun collectors who build collections of, I think, rare firearms, and those are the sorts of applications the ATF sees. But I just want to emphasize the point about sort of how many of these things are lawfully registered. We made a good-faith attempt at an estimate in our brief, and it's 140,000 lawfully registered ever. It appears that the vast majority of those are to law enforcement agencies or to the manufacturers themselves. Just by way of comparison, the Congressional Research Service put out a gun control analysis in 2012 that estimated that there are currently 82 million shotguns of all varieties either in private hands or available for purchase by private citizens. So the number of whether it's 40,000, 50,000 ever is a vanishingly small number of sought-off shotguns that had been lawfully registered. I think there's something in one of these briefs that a manufacturer, a manufacturer in States where these weapons are lawful, has advertised them as ideal for use in self-defense. There is something like that in one of the briefs. I don't think a manufacturer's sort of market strategy should govern the analysis. It certainly shouldn't refute this Court's judgment, Congress's judgment, the judgment of State legislatures for decades that these weapons have no lawful uses. And I'm not aware of, for example, a spike in applications for registrations for sought-off shotguns to the ATF, which you might expect to see if these weapons were suddenly being in common use for self-defense. I just wanted to address a point that I think Justice Kagan raised with my friend, which was are we sort of solely relying on a correlative relationship between the enumerated offense and the potential for violence? And I think it's a great deal more than a correlative relationship. I think it's actually precisely the same relationship between the crime and the potential for violence present for burglary, attempted burglary, extortion, which is to say this. The enumerated crime enables the potential for violence in a but-for causal sense, but the offender has to take an additional act of volition to bring the violence to fruition. So, for example, with a burglary or an attempted burglary, a burglar could say, if I'm confronted by a homeowner or a police officer, I'm going to flee. I am not going to attack anybody or I'm going to give up. The burglary enables that confrontation to occur, but the offender has to take an additional act of volition to actually bring violence to fruition. And it's the same thing here. The analogy to that is the person who uses the sawed-off shotgun in a crime but decides I'm not going to shoot it. And then you say, it doesn't really matter if you're not going to shoot it. You just used it in a criminal activity. That's enough for us. But this is a good deal more attenuated than that, because this person could, for whatever reason, maybe because he wants to commit a crime in the future or maybe he's one of the odd collectors or people who think that this is good for self-defense, this person could have kept it in a locked closet in a safe deposit box and never have brought it out and never have any potential for use in a crime. I mean, it would be one thing to say use in a crime causes enough risk of serious injury, but this is a step further. I agree that a necessary premise of our argument is that the ordinary case of possession is possession in connection with crimes. So if you don't buy that, we're in trouble. But you should buy that. It's what this Court said in Heller, when it said short-barreled shotguns are not typically used by law-abiding citizens for lawful purposes. Kagan. But there are two separate offenses, right, possession of this gun and use of this gun, and you're converting the one into the other for purposes of ACCA. And that makes total sense, and let me explain why. If it wasn't like that, clause 2 of the definition of violent felony, it's at 11A of our statutory appendix, would do no work. The whole point of that clause is to capture situations that were pregnant with the possibility of violence, but where the apprehender was offended before the violence occurred. If an offender used a firearm against somebody, he would be squarely within clause 1, which is the use of force or the threatened or attempted use of force against somebody. The whole point of clause 2 is when you catch someone who put themselves in the position to do violence, but the violence didn't materialize on that occasion, they still fall within clause 2. And that makes sense, because that sort of behavior is reflective of the armed career criminal. I mean, this is the weapon of choice, historically, along with machine guns, of the armed career criminal. So it would be kind of odd if the illegal possession of this weapon didn't satisfy or didn't count as a predicate under the Armed Career Criminal Act. Do you think the same would be true of a felon in possession? No, and I think that's an important difference. I think the felon in possession statute reflects a slightly different judgment. It's the judgment that someone who's committed a felony, whether it's a violent felony or, you know, bank fraud or something, has revealed themselves to be an irresponsible person who can't be trusted with a firearm. I think in that sense it's more prophylactic in nature, but you certainly don't have the authority. Kagan. I would think that in a felon in possession law, I mean, honestly, I'm sure the numbers dwarf the sort of shotguns. And, you know, the whole point of that is, yes, there are people who have shown themselves to be irresponsible, who have shown themselves perhaps to use weapons irresponsibly, and they're going to do it again. And there's a pretty strong correlation of a kind of recidivism that makes Congress pass that law. I think that's an accurate description of felon in possession, but there are nevertheless felons who legitimately want a handgun, which has been in common use for decades for self-defense or for target practice or whatever. The judgment that this Court's rendered and that Congress has rendered is that these weapons do not have other purposes in the ordinary case. And I think that distinguishes really a sawed-off shotgun offense almost from any other. Breyer. Where did Congress say that? Where? Where? I mean, a felon in possession has a gun, and you say he might keep it upstairs, in his closet, in the back of a car, in his hand. Many places he might possess it. And he might never use it for a crime. Recognizing that, you say that doesn't fall within the statute. Just substitute the word sawed-off shotgun in the closet, the back of the car, glass case, maybe in his hand, maybe in somebody else's hand. Maybe he just says to somebody, I have a sawed-off shotgun up there, give me your money. All right? All those things are possible with either. And so since they're possible with either, on what basis do we write an opinion that says you win with the sawed-off shotgun, but you lose with every almost every other kind of gun? What's our theory? What lines would there be in that opinion? Here's the line. When you have a firearm that has historically been exclusively associated with violence, unlike a handgun, but just like a sawed-off shotgun. Breyer. My goodness, I'll stop right there for a second, because what we heard was there are 40,000 or more people in 10 States and others that don't even make it unlawful. So how can we say it's more associated with crime than what? A handgun or a regular or a torpedo? I don't know. I think we would contend that unlawful possession of a torpedo. I realized you were going to say that, and all I put that in was to express my own lack of knowledge of which is which, and therefore, I can't just speak ex cathedra and say this. I'd have to have some proof. And what's that? I understand the uncertainty in a case without empirical data. It was the same uncertainty that the Court had in James, where it said we don't have empirical data to make the judgment. And in both James and Sykes, the Court said at the end of the day in some of these ACCA cases, we need to rely on our common-sense judgment. But here, I think what I hope would be the Court's common-sense judgment. Scalia, I mean, I've seen a lot of movies, James Cagney, but I can't use that. Let me just say where I think you can ground the common-sense judgment. We've set forward in the brief Federal statutes, State statutes, the legislative history, Senate and House reports, saying these weapons are exclusively associated with lawbreaking and crime. There's a history of that. That's why they've been regulated. And I think to go to a colloquy that my colleague was having, one of the members of the bench, the judgment of State legislatures and the Federal Congress is not something sort of to be cast away as the product of superstition. State legislators, Congress people, talk with their constituents. They speak with law enforcement agencies. They exercise reasonable judgment based on the facts of the ground when they enact laws like this. And I don't think it can be really disputed, as Justice Alito was alluding to earlier, that those legislatures have made a judgment that these weapons are exclusively associated with crime. And I think that's a much better factual argument. Breyer, why don't you say the same thing with a Saturday night special? I'm not familiar with the term. Oh, boy. It used to be. It was a special kind of pistol that was really used very, very heavily with robberies and crimes. And they were viewed, that was one of the first things, you know, that people tried to get banned after assassinations. I'm not saying that our argument couldn't apply to any other weapons. I imagine we have a similar case on unlawful possession of machine guns, for example. No, no. This isn't a machine gun. It's a pistol. I mean, a handgun. We'd have to do the work. I mean, I don't mean to cut off. No, no. We'd have to do the work. Here, I think we have done the work. I mean, we have a legislative and judicial consensus over decades that these are exclusively used in crimes. But we know that's not true. We know there are 40,000 registered that by, you know, and you yourself, I think, said that if you are willing to give your photograph and fingerprint or whatever to the Federal Government, you're probably not going to use it illegally. So we know it's not true that these are exclusively used in criminal activity. Well, I think there's two points in that. One was the point I was alluding to earlier, which is not only that Congress thinks sort of this process ameliorates the normal effect of possession of a sawed-off shotgun, and that these are actually registered in extraordinarily small numbers relative to total gun possession. Well, what number would be enough? I mean, if we had 100,000 registrations, does that mean that it's no longer conduct that presents a serious potential risk? I'm not sure. I want to give you two answers to that question. I mean, the first is that, as this Court said in James, the relevant data point is convictions. So there's no convictions for lawful possession of a sawed-off shotgun. The relevant data point is how many convictions for unlawful possession are associated with otherwise nonviolent activity. And Petitioner hasn't really pointed to any cases of sort of law-abiding citizens using it in other ways. Robertson is possession of explosives an offense under this enhancement provision? I think we'd run the same analysis, and we talk about this at pages 47 to 48 of our brief, which is to say explosives regulated by the NFA, which are defined to be explosives designed as weapons, yes, it's pretty much the same analysis we'd run here. Even though the statute says use of explosives is covered, you're going to say, well, under the catch-all phrase, mere possession is covered. No, and there's no redundancy, because maybe we explain this unclearly. What we try to explain is that the use of explosives would encompass a felony conviction for the use of any explosives. So there are felony convictions for the use of TNT or dynamite, explosives that are not inherently dangerous in character, but can be used unlawfully. The possession offense under the reasoning we've set forth in the brief would apply to weaponized explosives, those regulated under the NFA because they're designed as weapons, napalm and things like that, not to the unlawful possession of TNT, even though the unlawful use of TNT would fall under the use of explosives statute, provided it's a felony. So I don't think there's any redundancy created there. And I guess just to wrap up this colloquy, I think it's possible to imagine an alternative universe where sought-off shotguns developed as self-defense weapons in ordinary use. And in that case, the ordinary case analysis would look very different. You would say, well, maybe there are some people who unlawfully acquire these, just like some people unlawfully acquire handguns for self-defense. But this Court has never recognized this. This Court said very clearly in Heller, in distinguishing Miller, that these are not in lawful use by law-abiding citizens. That's not the way the real world looks. In the real world, these are unlawfully possessed for use in crime. And once you accept that proposition, the final step of our analysis is that when these items are brought to crimes, it seriously increases the chance that someone is going to be killed or wounded. We've set forth the characteristics of the weapon and the sort of damage they do. I won't repeat that. But I don't even really hear Petitioner to dispute that in the ordinary case, when the — in what we call the ordinary case, when these are brought to crimes, they massively increase the chance. Roberts. Well, that's a second step, unlike the others. When you're engaged in a burglary, the risk is there. When it's mere possession, the risk isn't there. You have to take an additional step of taking it and using it in the crime. And I think burglary has the exact same connection.  When you — extortion even defined most narrowly, as Justice Scalia would have defined it in James, to be a threat of violence to person or property, that itself does not create the possibility of violence. It's only if the extortionist is willing to follow through on the threat to take an additional step, just like the additional step of using a firearm, that the violence materializes.  And I think it's important to note that the homeowner, as Justice Scalia has had in mind, did contemplate an additional step by the offender himself. Well, the homeowner could happen to have a short-barreled shotgun and shoot the burglar. But remember, I think the violence doesn't depend on any additional act by the burglar. It does, Mr. Chief Justice, because the statute says violence to another. So if the homeowner clocks the burglar, that's not the violence the statute contemplates. And I suppose you could imagine fanciful scenarios where the police officer accidentally shoots the homeowner, but surely that's not the sort of ordinary case of violence that this statute had in mind. So I think the parallel you're drawing is that burglary itself doesn't present a risk of violence until the burglar pulls a gun. Or attacks the homeowner. And like I said, I think it's most clear in extortion. I mean, even the Court suggested in James that extortion could be even much broader to include blackmail and sort of prototypical extortion. But even if we just accept Justice Scalia's view of extortion, which was that it's a threat to person or property, there must be some number of extortionists that say, well, I'm going to make the threat, but I'm actually not going to follow through on the threat. And the violence of the burglar is not a threat to person or property. Ginsburg's view is that there could be lawful possession, because it's explosives, it's use that's given as an enumerated crime. And what we would say is, by parity of reasoning to what we've set forth in the brief with respect to firearms, weaponized explosives. That is to say, explosives that only have a use as a weapon could fall under the residual clause. Breyer, you're the proposition, then, that I must accept, I think, for you to prevail. Is possession of that which is normally used or has a very serious risk of being used in a way that risks physical injury to another, falls within the statute? And instead of drawing a line between possession and some other use of the thing, we say sometimes possession is in itself within the statute, sometimes it's not. If you possess those things, that have as a predominant use participation in a matter that's likely to cause physical injury to another, that's within the statute. If that's the proposition, is there any case where simple possession of anything has been interpreted as falling within this language? I don't know the answer. You mean circuit or Supreme Court cases? Any. Any case. Well, we've won this. We've won this issue. Well, no, I'm not. You've won this issue in? In circuit courts. I think the eighth one. But those are the those – it's this issue. There's not some other area I could look at. I think there's a case out of the Fourth Circuit with possession of weapon in prisons. Obviously, the setting can change the analysis to some degree, but I believe there's a Fourth Circuit, and maybe my opponent will have a direct look at it. There's a Fourth Circuit case, and then this line right here. Okay. I don't mean to suggest that there's no other cases. I would not be surprised if there were possession of machine gun and short-barreled rifle and silencer, in other words, the very firearms covered by the NFA. Also, I think short-barreled shotguns are, and this is to underscore the point, more often used in crimes, and so you're going to see a proliferation of cases there. But at that point, there are tools, isn't it? Burglar tools are outside, right? Possession of burglar tools will not get you under ACCA. This Court reserved that question in James in a footnote, because I think some States purportedly had defined attempted burglary to be something like possession of, to include something like possession of burglar tools. I think we have a much harder case there, because there's a longer chain of attenuation. Ginsburg. But there's no other use. There's no other use for burglar tools than in burglary. I think that's true. I think we'd have to build the practical case, one, that burglar tool, the mere possession of burglar tools is sort of inevitably associated with committing burglary. It may be that there's a lot of people who acquired them to think about committing burglary, but don't make the sort of attempt that James contemplated would result in a confrontation, and then it's more attenuated because you're linking up this burglary tools with committing burglary and then burglary with the confrontation. I think it's a much tighter nexus here. I think if you asked an ordinary congressperson whether they think there's a tighter connection between possession of a sawed-off shotgun and acts of violence rather than, you know, possession of a crowbar and acts of violence, I think most people would say yes, that's sort of the common-sense answer that most legislators   Sotomayor. Sotomayor.  Sotomayor.  Sotomayor. Sotomayor. Sotomayor. Sotomayor. Sotomayor. Sotomayor. Sotomayor.        Sotomayor. Sotomayor. Sotomayor. I don't know how to differentiate that from this, because most felons in possession of a gun, I'm sure the statistics would show, are committing crimes. So if the question is the risk of injury to others, it would be a felon possessing a handgun of any kind, and not a common citizen, because, yes, common citizens more often than not, we hope, use guns that they possess for lawful purposes. But felons, I would think, just as a matter of logic, what Justice Alito was asking, that felons more often than not use guns in illegal activities. I don't know. I mean, for one thing, we have the judgment of the Sentencing Commission here that we're in full accord with, that possession of a sawed-off shotgun is fundamentally different than felon possession.  Sotomayor, I understand that. I just want you to give me some sort of analytical approach on when to judge that risk, or how to differentiate that risk, so that everything, every possession crime doesn't become a crime of violence. I understand the concern. And I think the analytical line to draw is that weapons that, by their nature, are exclusively associated or, in the ordinary case, associated with violent crimes count under ACCA. I don't think that the Felon in Possession Statute reflects quite the judgment that every felon that possesses a firearm is going to commit acts of violence with it. I think it reflects the sort of prophylactic concern that these folks have proven themselves irresponsible lawbreakers, even if they committed a nonviolence felony and they, you know, lost their ability to responsibly care for firearms and to handle firearms. I do think it's a different judgment than the judgment of why people can't unlawfully possess mortars and artillery pieces and torpedoes and sawed-off rifles and shotguns and machine guns. I think it's a different judgment. The Petitioner has really not refuted the historical understanding that these are uniquely and purely associated with crime. And I think a few thousand registrations since 1934 lawfully does not refute the common-sense conclusion that the unlawful possession of a sawed-off shotgun is associated with crime. Roberts. Is that the 40,000 you're talking about? I'm sorry to say a few thousand, is that the same statistic as 40,000? And I'll just say it's 140,000. We think it's a great deal lower than that. That's the total number of registrations since 1934. As we say in the brief, we can't have perfect certainty, but it appears that the majority are registered with law enforcement or manufacturers. I might have used a different word than a few thousand. Forgive me, a few ten thousand or a few dozen thousand. And the Arms Career Criminal Act in general and the residual clause in particular has caused no end of problems for this Court. Are you aware of any efforts made by the Justice Department to propose legislation revising either the act in general or the residual clause? I'm not aware of those efforts. That doesn't mean they don't exist, but I, standing here, am not aware of the efforts. But I, you know, I'm not aware of those efforts. Breyer. Well, would you think, which I once suggested and certainly didn't have the nerve to follow through, that it's more likely that the Department of Justice with the aid of the Sentencing Commission could get the relevant statistics than it is that a defendant could. So if no statistics appear, we should draw a presumption against the department? Well, this Court has held otherwise in James. Yes, yes. I realize that. So, I mean, I think that's a statutory story, decisive holding that the government could do something. That is to say, even without legislation, is it possible that the department, through its statistical gathering resources, and it has some, working with the Sentencing Commission, could help us more on the underlying statistical data that would give us a clue as to what was dangerous and what was not? I think that's conceivable. I'm not familiar with all the sort of statistical resources of the Department of Justice. But I just want to emphasize, this is the clear case. This is the case where Congress and State legislatures and this Court and Heller and Miller have said for decades. So I don't think there's a fair argument that criminals are not unnoticed, that possession of an unlawful shotgun can carry very serious consequences. Maybe in a closer case down the road, you say, well, the department could have come up with statistics and that would be, you know, we're going to rule against the department for that reason. But, I mean, we have a quote from Judge Boudin in the brief, in the Shaw case, where anyone that watches television or reads the newspaper knows that these are especially associated with crime. So I don't think it came as a surprise to Mr. Johnson that when he commits two robberies and one illegal possession of a sawed-off shotgun, eventually that's going to catch up with him. If the Court has no further questions. Roberts. Thank you, counsel. Ms. Menendez, you have four minutes remaining. Thank you, Mr. Chief Justice. Just briefly, with respect to Justice Breyer's question, there are a couple of related contexts where there are some appellate decisions. The Eighth Circuit in Archer, which is cited in our brief, has held that possession of a concealed weapon is not a violent felony under the Armed Career Criminal Act. In addition, in the Fourth — I'm sorry, the Ninth Circuit in a case called Fish, which I am not sure whether we've cited it in our brief, but it's a 2004 decision, held that possession of a pipe bomb was not a crime of violence under the sentencing guideline provision, not the Armed Career Criminal Act. And I do agree with my opposing counsel that there's been one decision that went the which I think is a very different circumstance. Your Honors, I do think that it's important to look at James comparing attempted burglary as to burglary. I think it gives us a great deal of guidance. In James, the Court found that there wasn't any textual justification for treating those differently. Here, we have a very clear textual justification in terms of use of explosives, which gives us a strong signal that mere possession wasn't contemplated. The government invites this Court to do pretty convoluted reasoning, adopting an unstated definition from a totally unrelated statute in Title 26, and assuming that Congress meant when it said use of explosives that all things listed in the National Firearms Act would be included by mere possession. I don't think we can make that leap. Your Honors, it's also not true that there's a unanimous belief that these are inherently unjustifiable weapons. In fact, I think that the fact is most legislatures allow these to be possessed in some context or another, and Michigan has just indicated that perhaps the old historical reputation of this weapon is no longer deserved. But this Court doesn't have to like the short barrel shotgun or decide that it's even an appropriate weapon for punish or for possession in order to agree that we can't assume from its possession alone that someone has only nefarious purpose. In addition, Your Honors, the relevant analysis has to begin with the offense. And the government tries over and over again to say, well, it's obvious that these would only be possessed for nefarious reason, but they cannot substantiate that. They disagree with the 14 cases I encouraged the Court to look at from page 14 of our reply brief, that those are mere possession cases. By characterizing the people who possessed those weapons, they were found during the course of investigations of other crimes, but that doesn't mean a single one of those possession acts was actually possession during a crime. And this Court certainly can't assume that merely because a criminal or a bad person had possessed the weapon that they possessed it for nefarious purposes. Finally, Your Honors, I would really encourage the Court to consider the rule of lenity and its application in this case. The government has not brought statistics nor clear, decisive textual argument that mandate the application of one of the most onerous sentencing provisions that we see in Federal courts every day. This statute is applied to 600 people a year. It lacks all clarity. And while this Court need not get into whether it is unconstitutionally vague and the baby should go out with the bathwater, the Court can certainly decide that Congress did not speak clearly on this question and that it should not be applied to Mr. Johnson. Unless there are any further questions, I appreciate the opportunity to present argument. Thank you, counsel. The case is submitted.